UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER ROESKE,

                    Plaintiff,          Civil Action No. 20-13407

v.                               Laurie J. Michelson
                                   United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,                David R. Grand
                                   United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

Plaintiff Jennifer Roeske ("Roeske") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 12, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Roeske is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Roeske's Motion for Summary

Judgment **(ECF No. 12)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Roeske was 39 years old at the time of her alleged onset date of June 9, 2012, and at 5'7" tall weighed between 140 and 200 pounds during the relevant time period. (PageID.74, 109-110, 245, 248).[1]   She graduated from high school and earned an associate's degree in business.  (PageID.76, 249).  Roeske worked as a manager at a gas station from 1999 to 2010, then as a mail carrier from June 2011 to June 2012.  (PageID.76-77, 80, 250, 260, 263).  She was injured in a work-related motor vehicle accident on June 9, 2012 and stopped working for several months; subsequently, however, she worked briefly from late 2012 to early 2013 as a customer service representative at the Michigan Secretary of State.  (PageID.76, 249-50).  She now alleges disability primarily as a result of left knee, neck, and right arm pain.  (PageID.84, 88-90, 248, 268).

After Roeske's application for DIB was denied at the initial level on July 29, 2019 (PageID.123-27), she timely requested an administrative hearing, which was held on May 6, 2020, before ALJ Crystal White-Simmons (PageID.69-108).  Roeske, who was represented by attorney Frank Partipilo, testified at the hearing, as did vocational expert ("VE") Zachary Matthews.  (*Id.*).  On May 22, 2020, the ALJ issued a written decision finding that Roeske was not disabled under the Act during the time period at issue.

---

[1] Citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7.

(PageID.53-64).  On November 4, 2020, the Appeals Council denied review.  (PageID.30-

35).  Roeske timely filed for judicial review of the final decision on December 29, 2020.

(ECF No. 1).

> **B.      The Relevant Medical Evidence[2]**

Roeske sustained a left knee injury in a motor vehicle accident while delivering mail

on June 9, 2012.  (PageID.354).  She saw Todd Murphy, M.D. at Orthopedic Associates

on June 14, 2012, reporting pain, but there was little swelling.  (*Id.*).  An MRI was ordered,

which showed chondromalacia patella grade II-III along the superior and lateral aspects of

the  patella  with  subjacent  osteochondritic  erosions,  as  well  as  possible  mild

chondromalacia along the posterolateral tibial plateau.  (PageID.356-57).  Roeske was

advised  to  start  physical  therapy  and  was  taken  off  work  for  a  couple  of  weeks.

(PageID.353).  At her next visit, on July 9, 2012, Dr. Murphy noted that Roeske was

"making progress" and advised her to continue physical therapy.  (PageID.350-51).  At an

appointment on August 6, 2012, Dr. Murphy noted that Roeske's "knee is pretty good

except she cannot move it all the time" and "has difficulty with stairs."  (PageID.348).  Her

"biggest issue with work is 'driving [the postal truck] from the other side of the vehicle.'"

(*Id.*).  Over the next few months, however, Roeske continued to report left knee pain, and

cortisone injections were administered while she remained off work.  (PageID.342-49).

---

[2] The period under review in this case is between February 2013 (the date after Roeske last worked) and June 30, 2018 (the date last insured).  (PageID.55).  Thus, the Court will focus on medical evidence relating to that time period.

On November 30, 2012, Roeske was sent for a functional capacity evaluation, which concluded that she could perform a range of sedentary work.  (PageID.340).   The evaluation showed that Roeske was "very limited with her ability to squat, knee[l], or climb stairs"; "less limited" in standing and walking (with the ability to occasionally perform these activities); and able to sit on a constant basis.  (*Id.*).  On May 22, 2013, Dr. Murphy noted that Roeske had undergone a series of three Euflexxa injections with no benefit.  (PageID.323).  However, he continued to opine that she could perform sedentary work, with right-footed driving only and the additional limitations set forth above.  (PageID.323, 325).  Indeed, as he had indicated with respect to her many prior visits, Dr. Murphy noted that although Roeske had significant limitations "with her ability to squat, knee[l], or climb stairs," "[s]tanding and walking are less limited with [Roeske] demonstrating the ability to perform these activities at the occasional level."  (PageID.323).

In June 2013, after she complained to her primary care physician, John Columbo, M.D., about neck pain, Roeske underwent an EMG, which showed mild radial sensory neuropathy on the right, but no evidence of cervical radiculopathy.  (PageID.314-15).  Dr. Columbo referred Roeske to Matthew Sciotti, M.D. at Orthopedic Associates, who saw her on August 7, 2013, regarding her complaints of cervical pain and numbness in the right hand.  (PageID.319-21).  On examination, Roeske had minimally to moderately reduced range of motion in the cervical spine and slight pain to palpation over the cervical paraspinal muscles.  (PageID.320).  Dr. Sciotti noted that an MRI of the cervical spine performed on July 3, 2013, showed no evidence of disc herniation, and x-rays of the cervical spine revealed no osseous abnormalities.  (*Id.*).  He found, "[e]xamination of the

4

back does not show any tenderness, deformity, or injury.  Range of motion is unremarkable.

There is no gross instability.  Strength and tone are normal." (*Id.*).  He recommended

physical therapy and massage therapy and indicated that Roeske's hand numbness did not

appear to be stemming from her cervical spine. (PageID.321).  Dr. Sciotti further opined

that he "would not restrict [Roeske] at work in regard to her cervical spine," but rather,

would merely advise her to avoid excessive raising of the arms overhead and keeping the

arms outstretched. (*Id.*).  Over the next few years, Roeske continued to complain to Dr.

Colombo of knee, neck, and shoulder pain (*E.g.*, PageID.446, 453, 497, 515, 531, 673).

When Roeske's left knee pain did not improve, she ultimately was referred to

Jeffrey DeClaire, M.D., an orthopedic surgeon, in September 2015. (PageID.417-18).  An

MRI was performed on December 30, 2015, which showed a full-thickness cartilage loss

involving the median ridge of the patella and the lateral patellar facet with underlying

subchondral changes. (PageID.412).  Although arthroscopic surgery was recommended,

Roeske opted to proceed with a patellofemoral joint arthroplasty. (*Id.*).  This surgery was

performed on January 16, 2017 (PageID.363-64), and Roeske recovered well (PageID.405-

09).  In March 2017, however, when Roeske still had difficulty with quad shutdown and

gaining appropriate range of motion, manipulation under anesthesia was performed.

(PageID.361, 403-04).  Over the course of the next year, Roeske continued to treat with

Dr. DeClaire, who advised physical therapy (PageID.394) and noted in October 2017 that

she was "doing better than [he had] seen her doing in the past[,]" despite a "thickening

sensation in the quadriceps region." (PageID.389-90).

On April 26, 2018, Roeske underwent a left knee arthroscopy and scar resection, abrasion arthroplasty of the medial femoral condyle, and removal of loose body. (PageID.359).  Over the next few months, her symptoms improved.  For example, at a June 5, 2018, appointment, Roeske had a normal gait.  (ECF No. 376).  At an August 2018 appointment, shortly after her June 30, 2018 date last insured, Roeske also had a "normal gait," reported only "mild anterior LT knee pain," and indicated that "her symptoms have improved . . ."  (PageID.373).  She was only taking over-the-counter Tylenol for her knee pain.  (*Id.*).  The doctor indicated that "overall she is doing very well" and "will continue with her exercise and strengthening program."  (*Id.*).  The records also indicate that Roeske "denies the continuation of home exercises at this time."  (PageID.370).

### C.      The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Roeske was not disabled under the Act during the relevant time period.  At Step One, the ALJ found that, aside from a brief period of time, Roeske did not engage in substantial gainful activity between June 9, 2012 (the alleged onset date) and June 30, 2018 (the date last insured).[3] (PageID.55).  At Step Two, the ALJ found that she had the severe impairments of osteoarthritis of the left knee (status-post multiple knee surgeries) and mild radial sensory

---

[3] Specifically, the ALJ found that Roeske engaged in substantial gainful activity between June 2012 and January 2013.  (PageID.55).  Roeske does not challenge this finding.

neuropathy of the right upper extremity.  (PageID.56).  At Step Three, the ALJ found that

Roeske's impairments, whether considered alone or in combination, did not meet or

medically equal a listed impairment.  (PageID.57).

The ALJ then assessed Roeske's residual functional capacity ("RFC"), concluding

that, during the relevant period of time, she was capable of performing sedentary work,

with the following additional limitations: no climbing of ladders, ropes, or scaffolds;

occasional climbing of ramps and stairs; occasional balancing, stooping, and crouching; no

kneeling or crawling; frequent reaching overhead; frequent handling and fingering with the

right upper extremity; and requires the option to alternate to standing for 1-2 minutes after

20 minutes of sitting.  (PageID.58).

At Step Four, the ALJ found that, during the relevant period of time, Roeske was

not capable of performing any of her past relevant work.  (PageID.62).  At Step Five, the

ALJ determined, based in part on testimony provided by the VE in response to hypothetical

questions, that Roeske was capable of performing the jobs of packer (34,000 jobs

nationally), sorter (24,000 jobs), and office clerk (63,000 jobs).  (PageID.63).  As a result,

the ALJ concluded that Roeske was not disabled under the Act between June 9, 2012 (the

alleged onset date) and June 30, 2018 (the date last insured).  (*Id.*).

### D.    Standard of Review

The  District  Court  has  jurisdiction  to  review  the  Commissioner's  final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute

is limited in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard or has

made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be

affirmed even if the reviewing court would decide the matter differently and even if

substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health &*

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

    **E.**    **Analysis**

In her motion, Roeske argues that the ALJ erred in: (1) evaluating her subjective

complaints; (2) formulating her RFC; and (3) failing to provide an accurate hypothetical to

the VE.  (ECF No. 12, PageID.726-38).  For the reasons set forth below, the Court finds

no error warranting remand.

    *1.*    *The Evaluation of Roeske's Subjective*
             *Complaints is Supported by Substantial Evidence*

In her decision, the ALJ found that Roeske's "statements concerning the intensity,

persistence and limiting effects of [her] symptoms are not entirely consistent with the

medical evidence and other evidence in the record …."  (PageID.59).  In reaching her

conclusion, the ALJ further explained:

> As for the claimant's statements about the intensity, persistence, and
> limiting effects of her symptoms, they are inconsistent because
> despite reporting generalized myalgia and paresthesia, the claimant
> was imprecise in her testimony as to how long she could sit,
> stand/walk and while reporting that it was limiting, upon actual
> physical exam she had normal range of motion (ROM).  She alleged
> a loss of strength generally, but her motor strength in 2013 was 5/5 in
> the bilateral upper extremity, except for her rotator cuff musculature
> including supraspinatus, which were 4-/5.  Her lower back exam did
> not show any tenderness, deformity or injury.  Her ROM was
> unremarkable.  Her hand numbness did not appear to be stemming
> from her cervical spine (Exhibit 2F/4, 5).  On May 1, 2019, a physical
> exam for gait and station was normal.  The claimant used no hand held
> assistive device (Exhibit 3F/16, 24).  This is consistent with mild to
> moderate limitations and adequately accounted for in the RFC.
> Neither Dr. Sciotti, nor Dr. Murphy, two of the claimant's treatment

10

providers, opined that she was incapable of all work.  The limitations provided in the RFC account for the symptoms noted by the treating source doctors.  (*Id.*).

In her motion, Roeske focuses entirely on the first portion of the ALJ's analysis – arguing, "[t]he sole reasons cited for [the ALJ's] credibility finding is the fact that Mrs. Roeske provided what the ALJ perceived as 'imprecise' testimony as to how long she could sit, stand/walk."  (ECF No. 12, PageID.726).  As an initial matter, the Court notes that Roeske's argument ignores other compelling reasons articulated by the ALJ for finding that her subjective complaints were not entirely consistent with the evidence.  (ECF No. 12, PageID.726-30).  Specifically, the ALJ noted that "[n]either Dr. Sciotti, nor Dr. Murphy, two of the claimant's treatment providers, opined that she was incapable of all work … [and] [t]he limitations provided in the RFC account for the symptoms noted by the treating source doctors."  (PageID.59; *see also* PageID.321 (Dr. Sciotti's opinion that he "would not restrict her at work in regard to her cervical spine"), 323 (Dr. Murphy's opinion that Roeske could perform a limited range of sedentary work, with right-footed driving only)).  In other words, the ALJ found that Roeske's allegations were unsupported by even the opinions of her treating physicians – a valid, and very probative, consideration. *See Soc. Sec. Rul. 16-3p*, 2016 WL 1119029, at *6 (Mar. 16, 2016) (relevant evidence includes statements from medical sources); *see also Sadger v. Comm'r of Soc. Sec.*, No. 20-11900, 2012 WL 4784271, at *11 (Aug. 23, 2021) (medical evidence "must be considered" when evaluating a claimant's subjective complaints).  This alone is enough to show that Roeske's argument lacks merit.

Roeske's focus on some of the other reasons articulated by the ALJ for discounting

her subjective allegations of disability also lacks merit. First, Roeske complains that the ALJ was wrong in characterizing her testimony about her ability to sit, stand, and walk as "imprecise." (ECF No. 12, PageID.727-28). But a review of Roeske's testimony reveals that there is in fact some ambiguity. Roeske initially testified, upon questioning by the ALJ, that she could "probably" stand for just "15, 20 minutes," sit "[p]robably about the same," and walk for one city block (with breaks). (PageID.86-87). On follow-up examination by her own attorney, however, Roeske added that she had to elevate her legs while sitting and that, after sitting, she could not stand but instead needed to move around for about 10 minutes. (PageID.97-98). The ALJ's characterization of Roeske's testimony as "imprecise" was not unreasonable.

Roeske also takes issue with the ALJ's observation that her range of motion was normal upon physical examination. (ECF No. 12, PageID.728-29). According to Roeske, this finding comes from an August 2013 examination by Dr. Sciotti, who – while noting that Roeske had no limitations in the range of motion in her back – observed "minimally to moderately reduced range of motion" in the neck. (*Id.* (citing PageID.320)). While the ALJ's characterization of Roeske's range of motion in her cervical spine as "unremarkable" on this date might not be entirely accurate, this was at most a harmless error as, on the very next page of her decision, the ALJ discussed the same treatment note and specifically mentioned Roeske's "minimally to moderately reduced range of motion" finding. (PageID.60). In any event, the finding of minimal-to-moderate limitation in the range of motion of Roeske's cervical spine was made by Dr. Sciotti in the same treatment note where he stated that he "would not restrict [her] at work in regard to her cervical spine"

12

and only advised her to avoid activities like "excessive raising of arms overhead" and

"keeping [her] arms outstretched[.]"  (PageID.321).

In summary, the ALJ identified substantial record evidence in support of her

decision to discount Roeske's subjective complaints of pain.  Where the Sixth Circuit has

held that an ALJ's subjective symptom evaluation shall not be disturbed "absent

compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), Roeske has

identified no error warranting remand.[4]

> 2.    *The ALJ's RFC Finding is Supported by Substantial Evidence*

Roeske next argues that the ALJ's RFC finding is not supported by substantial

evidence because the ALJ "essentially rejected the entire opinion of Dr. Murphy who is

the only doctor who rendered an opinion regarding Ms. Roeske's functional limitations

during the relevant period."  (ECF No. 12, PageID.730).  This is simply incorrect.

Specifically:

- Consistent with his determination that that Roeske's "[s]tanding and walking are less limited" and other findings, Dr. Murphy opined that Roeske could perform "sedentary" work, with "occasional" lifting of up to 10 pounds, "constant" sitting, and "occasional" standing and walking.  (PageID.323). The ALJ made these same findings.  (PageID.58).

- Dr. Murphy opined that Roeske was "very limited" in her ability to squat, kneel, and climb stairs.  (PageID.323).  The ALJ similarly found that she could only "occasionally climb ramps and stairs, and balance, stoop and

---

[4] Roeske also makes a passing reference to other abnormal physical examination findings in the record, such as swelling of the knee, neck spasms, altered gait, atrophy of the left quadricep, and instability.  (ECF No. 12, PageID.729).  But these findings do not establish any specific functional limitations.  Moreover, the law is clear that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286.

crouch … [and could do] no kneeling or crawling." (PageID.58).

- • Dr. Murphy further opined that, for Roeske, "all non-material handling skills involving reaching (non-forceful) and hand use present as occasional to frequent." (PageID.323). The ALJ limited her to frequent reaching overhead, handling, and fingering with the right arm. (PageID.58).

Thus, contrary to Roeske's assertions, the ALJ's RFC finding is based on – and squares with – Dr. Murphy's opinion.

In this section of her motion, Roeske does not clearly explain how the ALJ failed to account for Dr. Murphy's opinion; however, a full review of Roeske's motion shows that her concern is with the third bullet point set forth above. Specifically, Roeske argues that the ALJ did not adopt Dr. Murphy's opinion because Dr. Murphy said that she could do "occasional to frequent" reaching and handling, while the ALJ found that she could "frequently" do those things. (ECF No. 12, PageID.735). The problem for Roeske is that, by definition, an individual's RFC is the "*most* [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). And, the "most" Dr. Murphy opined that Roeske could do in terms of reaching and handling was "frequent." (PageID.323). Thus, Roeske has failed to establish any error in the ALJ's reliance on Dr. Murphy's opinion.[5]

---

[5] The fact that the ALJ properly relied on Dr. Murphy's opinion belies the premise for Roeske's argument that there was a "lack of any medical evidence" supporting the ALJ's RFC finding and, thus, the ALJ erred in failing to order a consultative examination or seek the advice of a medical examiner. (ECF No. 12, PageID.730, 735). As set forth above, there is a medical opinion in this case supporting the ALJ's RFC finding – Dr. Murphy's. Moreover, an ALJ is not required to base her RFC finding on a medical opinion. *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the [RFC] finding …."). And, finally, the regulations merely *permit* an ALJ to order additional examinations, they do not *require* it. *See* 20 C.F.R. § 404.1519a(a) ("we *may* decide to purchase a consultative examination") (emphasis added). Here, for the reasons stated above, the ALJ did not err in failing to order a consultative exam.

### 3. *The ALJ's Hypothetical to the VE Was Adequate*

Roeske also argues that the ALJ's hypothetical to the VE was flawed because it "did not include all functional limitations supported by the record." (ECF No. 12, PageID.734). Specifically, Roeske argues that the hypothetical should have included additional reaching and handling limitations.[6] (*Id.*, PageID.735-38). As set forth below, however, the ALJ was not required to include additional limitations in the RFC or the hypothetical question posed to the VE.

Roeske's argument for additional reaching and handling limitations comes from Dr. Murphy's opinion, but as previously discussed, *supra* at 12-13, the ALJ properly accounted for this opinion by restricting Roeske to "frequent" reaching, handling, and fingering. Moreover, even if the Court were to accept the premise of Roeske's argument – namely, that she should have been more limited in terms of reaching and handling, remand still would not be warranted. At the hearing, the ALJ posed a hypothetical to the VE with limitations to no overhead reaching and only occasional handling and fingering, and the VE testified that such additional limitations would still allow a person to perform the job of surveillance system monitor. (PageID.105). While Roeske seems to suggest in passing that the numbers for that job (5,000 national positions) are insufficient (ECF No. 12,

---

[6] In her motion, Roeske also suggests that the hypothetical should have included the need to elevate a leg while sitting and the inability to stay on task for at least 90% of the workday. (ECF No. 12, PageID.737-38). These limitations were based entirely on Roeske's testimony, however. And, as previously explained, *supra* at 9-12, the ALJ properly discounted Roeske's subjective complaints as not entirely consistent with the evidence. As such, Roeske has not met her burden of proving that additional limitations should have been included in the hypothetical to the VE.

PageID.737), she is does not cite any case law in support of this proposition, and the Commissioner has pointed to contrary Sixth Circuit authority.  (ECF No. 14, PageID.757 (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'")).

Ultimately, the ALJ's hypothetical to the VE included all of Roeske's *established* limitations.  Therefore, the ALJ properly relied on the VE's testimony to find that there were a significant number of jobs available for Roeske at Step Five of the sequential analysis.  *See Smith*, 307 F.3d at 378 (vocational expert testimony in response to accurate hypothetical constitutes substantial evidence.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Roeske's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: May 23, 2022                              s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                                       United States Magistrate Judge

## REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Michelson:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 23, 2022.

<div style="margin-left:50%">

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

</div>